## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| DIANNE RICE-REDDING, RICKY COLEMAN, KEN JOHANSEN, and ALVINA HAILE-RECIO, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>      v.<br><br>NATIONWIDE MUTUAL INSURANCE COMPANY,<br>               Defendant, | Case No. 1:16-cv-03634-TCB<br><br>**CLASS ACTION**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

## <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

Plaintiffs Dianne Rice-Redding and Ricky Coleman ("Coleman") (collectively "the Variable Plaintiffs"); and Ken Johansen ("Johansen") and Alvina Haile-Recio ("Haile-Recio") (collectively "the non-Variable Plaintiffs"), individually and on behalf of all others similarly situated, allege on personal knowledge, investigation of their counsel, and on information and belief as follows:

## <u>NATURE OF ACTION</u>

1.    This case involves a scheme by Nationwide Mutual Insurance Company ("Nationwide") (and by and through their agents) to market their

services through use of pre-recorded messages in plain violation of the Telephone

Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the

"TCPA").

2.      As described more fully below, Nationwide has issued a high volume

of insurance quotes – and made substantial sales of products and services – derived

through illegal telemarketing calls placed by the lead-generator marketing

company Variable Marketing, LLC ("Variable").

3.      Nationwide commissioned (and contributed to funding) its agents to

hire Variable Marketing, LLC (a/k/a Instant Insurance Marketing a/k/a Instant

Insurance Transfers) ("Variable"). Nationwide and its agents delegated their

marketing duties to Variable and ratified the conduct of Variable by accepting the

referrals and sales generated by Variable's calls.  Nationwide also actively

participated in the telemarketing calls through its own actions and the actions of its

agents.

4.      Nationwide violated the TCPA by hiring Variable to contact the

Variable Plaintiffs and similarly situated Class Members on their cellular

telephones for non-emergency purposes via an "automatic telephone dialing

system," as defined by 47 U.S.C. § 227(a)(1), and/or by using "an artificial or

prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A), without the Variable

Plaintiffs and Class Members' prior express consent within the meaning of the TCPA.

5.     Nationwide also violated the TCPA by itself making calls to Plaintiff Johansen, Plaintiff Haile-Recio, and Class Members on their telephone lines using an "automatic telephone dialing system" or "artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1), without Mr. Johansen's, Ms. Haile-Recio's, and Class Members' prior express consent within the meaning of the TCPA.

6.     Plaintiffs bring this action for statutory damages and injunctive relief under the TCPA, all arising from the illegal actions of Nationwide, who commissioned these campaigns in which pre-recorded messages were used to solicit insurance customers, and benefitted from those campaigns in the form of the potential for new Nationwide policies to be written.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA"), codified as 28 U.S.C. § 1332(d)(2).  The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call

that has violated the TCPA.  Further, Plaintiffs allege a national class, which will result in at least one Class member from a different state.

8.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

9.     This Court has personal jurisdiction over Nationwide because the conduct at issue in the case occurred, among other locations, in the State of Georgia, the company is licensed to conduct business in the State of Georgia.  As such, it has established minimum contacts showing that it has purposefully availed itself of the resources and protection of the State of Georgia.

10.     Venue is proper in the United States District Court for the Northern District of Georgia because Nationwide is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced, and because Nationwide's contacts with this District are sufficient to subject it to personal jurisdiction.

## **PARTIES**

11.     Plaintiff Dianne Rice-Redding is, and at all times mentioned herein was, an individual citizen of the State of Georgia, who resides in Atlanta, Georgia.

12.     Plaintiff Ricky Coleman is, and at all times mentioned herein was, an individual citizen of the State of Georgia, who resides in Atlanta, Georgia.

13.     Plaintiff Ken Johansen is, and at all times mentioned herein was, an individual citizen of the State of Ohio, who resides in Dublin, Ohio.

14.     Plaintiff Alvina Haile-Recio is, and at all times mentioned herein was, an individual citizen of the State of Washington, who resides in Renton, Washington.

15.     Defendant Nationwide is the parent company of a series of interrelated insurance and financial services companies.  Nationwide is an Ohio corporation with corporate headquarters in Columbus, Ohio.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

### The TCPA's Restrictions on Calls to Cellular Telephones

16.     In 1991, Congress enacted the TCPA[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

17.     The TCPA regulates, among other things, the use of automatic telephone dialing equipment, or "autodialers."

_____

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA).  The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

18.     Specifically, the plain language of section 227(b)(1)(A)(iii) of the TCPA prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

19.     According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

20.     The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[2]

21.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number are permitted only if the calls are made with the "prior express consent" of the called party.[3]

## The TCPA's Restrictions on Calls to Residential Telephone Numbers

---

[2] *In re Rules and Regulations Implementing the TCPA*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14115 (¶ 165) (2003).

[3] *In re Rules and Regulations Implementing the TCPA*, CG Docket No. 02-278, Declaratory Ruling, 23 FCC Rcd 559, 564-65 (¶ 10) (2008) ("2008 FCC Declaratory Ruling").

22.     Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy…
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* § 2(10) and (12).

23.     The TCPA prohibits persons from initiating any telephone call to a residential telephone line using a prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order of the FCC.  47 U.S.C. § 227(b)(1)(B); *see also* 47 C.F.R. § 64.1200(a)(2).

**The TCPA's Restrictions on Calls to Numbers on the National Do Not Call Registry**

24.     The national Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2).  A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."  *Id.*

25.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry.  47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

26.     A person whose number is on the Registry, and who has received more than one telephone call within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages.  47 U.S.C. § 227(c)(5).

27.     The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. *See* 47 C.F.R. § 64.1200(c)(2)(ii).  That agreement must also include the telephone number to which the calls may be placed.  *Id.*

## FACTUAL ALLEGATIONS

### Variable Marketing, LLC

28.     Until it closed down in late 2013, Variable Marketing, LLC, operated a "lead generator" business on behalf of several insurance companies, including Nationwide.

29.     As part of its lead generation operation, in 2012 and 2013, Variable made tens of millions of automated telephone calls.  These calls were made using a true sequential dialing system.

30.     Each outbound Variable call contained a pre-recorded message informing the recipient of an opportunity to save on their car insurance.

31.     As such, each of the calls made by Variable on behalf of Nationwide to cellular telephones violated the TCPA by using an automated telephone dialing system and utilized a pre-recorded voice without the prior express consent of the recipient of the call.

32.     Variable's business model consisted of selling "live leads" to insurance agents, including Nationwide agents.  When a consumer answered or returned the automated call, a Variable representative recorded the consumer's name, address, phone number, vehicle information, homeowner status, and driving record to develop an insurance quote. The screener then "matched" the caller with an insurance agent pursuant to standard contracts with each agent that affirmed the agent had Nationwide's permission to hire Variable to make calls on behalf of Nationwide.

33.     Variable maintained a database of leads transferred to agents. (hereafter "the Variable database").  This database contained all of the personal and demographic information obtained by Variable's screener and specified the agent to whom Variable transferred the lead.  According to Variable's records,

Variable transferred leads from calls to more than 20,000 unique wireless numbers to Nationwide agents.

**The *Smith* Action**

34.     On October 4, 2013, a class action complaint was filed in the United States District Court for the Northern District of Illinois on behalf of all persons who received an automated telephone call on their cellular telephones from Variable.  *Matejovich et al. v. American Automobile Association, Inc. et al.,* No. 1:13-cv-7149.  Nationwide was named as a defendant in the *Matejovich* action.

35.     On November 18, 2013, the *Matejovich* action was transferred and consolidated with *Smith v. State Farm Mutual Insurance Company,* No. 1:13-cv-2018 (N.D. Ill.) (hereafter "the *Smith* action").  On February 4, 2014, the plaintiffs filed a consolidated master class action complaint, naming Nationwide as a defendant, along with State Farm and Farmers Insurance.  Dkt. No. 111.

36.     On February 25, 2014, Nationwide, along with the other insurance company defendants, filed a motion to dismiss the consolidated complaint.  Dkt. No. 122.

37.     On August 11, 2014, the court in the *Smith* case granted the motion to dismiss as to Nationwide and Farmers, but denied it as to State Farm.  Dkt No. 146.  With regard to Nationwide, the Court in *Smith* held that the FCC Ruling

laying out the standard for vicarious liability for telemarketing calls was binding on the court.  Dkt No. 146, at 8-12.  However, the court concluded that the complaint did not assert sufficient facts to make out a plausible claim that Variable was the agent of Nationwide with regard to the calls.  *Id.* at 15-20.  As the case proceeded against State Farm, the *Smith* plaintiffs had no opportunity to challenge the dismissal of Nationwide from the case.  *See, e.g., Briehler v. City of Miami,* 926 F.2d 1001, 1002 (11th Cir. 1991) ("An order dismissing a complaint is not final and appealable unless the order holds that it dismisses the entire action or that the complaint could not be saved by amendment."); *Jones v. U.S. Dept. of Housing and Urban Development,* 46 F.3d 1133 (7th Cir. 1994) ("An order dismissing some defendants and leaving others does not constitute a final, appealable order.").

38.     The class claims pled herein were tolled during the pendency of the *Smith* action.

39.     During the course of the *Smith* action, the plaintiffs obtained the Variable database of leads transferred to insurance agents, including to Nationwide agents.  *See* ¶ 33, *supra*.  This database—which was not available to the plaintiffs at the motion to dismiss stage— unquestionably shows that Variable provided live leads to Nationwide agents, and that Nationwide received a benefit from those transfers in the form of opportunities to write policies stemming from the contacts.

40.     In addition, the *Smith* plaintiffs deposed Variable's corporate representative, who testified that, among other things, Variable acted as an approved vendor for Nationwide.  As part of that corporate-approved relationship, Nationwide invited Variable to one of its annual conferences and suggested that its agents hire Variable.

**Plaintiff Rice-Redding**

41.     Plaintiff Rice-Redding is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

42.     According to the Variable database, Plaintiff Rice-Redding received a call on her cellular telephone, number 678-860-XXXX, on November 8, 2012.

43.     Prior to this contact, Plaintiff Rice-Redding had no contact with Nationwide, and had never been (and has never been) a Nationwide customer.

44.     According to the Variable database, Plaintiff Rice-Redding was transferred to the Michelle Allen Agency, Inc., a Nationwide insurance agent located in Villa Rica, Georgia.

45.     Upon being transferred to the Allen Agency, Plaintiff Rice-Redding received a quote for automobile insurance to be underwritten by Nationwide.

46.     Plaintiff Rice-Redding did not provide prior express consent to receive this call.

47.     Plaintiff Rice-Redding was harmed by these calls because they were unwelcome intrusions on his privacy that occupied his telephone line from legitimate communications and depleted her cellular telephone battery.

**Plaintiff Coleman**

48.     Plaintiff Coleman is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

49.     According to the Variable database, Plaintiff Coleman received a call on his cellular telephone, number 678-665-XXXX, on November 12, 2012.

50.     Prior to this contact, Plaintiff Coleman had no contact with Nationwide, and had never been (and has never been) a Nationwide customer.

51.     According to the Variable database, Plaintiff Coleman was transferred to Marcellys Cosme, an associate agent with the Nighbert Agency, a Nationwide insurance agent located in Marietta, Georgia.

52.     Upon being transferred to the Mr. Cosme at the Nighbert agency, Plaintiff Coleman received a quote for automobile insurance to be underwritten by Nationwide.

53.     Plaintiff Coleman did not provide prior express consent to receive this call.

54.    Plaintiff Coleman was harmed by these calls because they were unwelcome intrusions on his privacy that occupied his telephone line from legitimate communications and depleted his cellular telephone battery.

## NATIONWIDE'S LIABILITY FOR THE VARIABLE CALLS

### Nationwide and its Agents' Marketing Arrangement with Variable

55.    Nationwide is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

56.    The Federal Communication Commission has instructed that sellers such as Nationwide may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

57.    In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations.

- 14 -

*Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

58.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

59.     Variable made the autodialed and prerecorded message calls described herein "on behalf of" Nationwide within the meaning of the FCC's Declaratory Rulings and 47 U.S.C. § 227(c)(5).

60.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."[4]

---

[4] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, CG Docket No. 11-50, Declaratory Ruling, 28 FCC Rcd 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

61.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 FCC Rcd at 6586 (¶ 34).

62.     The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call.  *Id.* at 6587 n. 107.

63.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

64.     Nationwide is directly liable for the Variable telemarketing calls because it:

        a.     actively participated in those calls;

        b.     paid for the calls that its agents commissioned through Variable; and

        c.     issued quotations for insurance wholly derived from Variable's calls.

65.     Nationwide requires its insurance agents to represent the company to consumers, including non-customers.

66.     Nationwide knowingly and actively accepted business that originated through the illegal telemarketing calls from Variable.

67.     Moreover, Nationwide maintains control over its agents' actions, both as to telemarketing and other activities by directing the content of its agents' advertising.

68.     At all times relevant, Nationwide had control over whether, and under what circumstances, they issued an insurance quote to a prospective customer.

69.     After a prerecorded message, calls by Variable on behalf of Nationwide agents would be transferred to a live Variable representative and then forwarded on to an authorized insurance agent of Nationwide.

- 17 -

70.     Either during the phone call, or a few minutes after this telephone call (but arising from the call), Nationwide would issue a quotation for auto insurance to the consumer, as it did with Plaintiffs Rice-Redding and Coleman.

71.     Nationwide was aware of the nature of the telemarketing campaign that it engaged in because it offered a program where it would pay for a portion of the cost of Variable's "services" for any agents that used those services.

72.     Because Nationwide offered to pay for a portion of the cost of Variable for any agents that used the services, it suggested to its agents that hiring Variable and using its telemarketing services was a good way to obtain new customers.

73.     Nationwide also invited Variable to one of its annual conferences, where it suggested that its agents hire Variable.

74.     Nationwide issued insurance policies to persons who accepted such quotations.

75.     The purpose of Nationwide agents is to serve Nationwide by soliciting applications for insurance from consumers on behalf of Nationwide.

76.     Nationwide agents were, and are, authorized to hire third parties, including Variable, to perform marketing, including telemarketing.

77.     Indeed, the standard contract entered into between Variable and its insurance agency customers, including Nationwide agents, contains a warranty that *the agencies had Nationwide's permission to hire Variable* to make calls on behalf of Nationwide.

78.     As such, Nationwide agents who hired Variable, including the Skipworth Agency, the Allen Agency, and the Nighbert Agency, did so with the actual authority of Nationwide.

79.     Each of the telephone numbers that Variable, acting on behalf of Nationwide, called to contact Plaintiffs with an "artificial or prerecorded voice" made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

80.     Nationwide was legally responsible for ensuring that Variable complied with the TCPA, even if Nationwide did not itself make the calls.

81.     Nationwide knew (or reasonably should have known) that Variable was violating the TCPA on its behalf, and failed to take effective steps within its power to force the telemarketer to cease that conduct.

82.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information."  *Id.* at 6592-593 (¶ 46).  Moreover,

evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

83.    Nationwide gave its agents substantial power to affect Nationwide's legal relations with third parties, including Variable and consumers generally.

84.    Nationwide cloaked its agents with apparent authority to enter into advertising arrangements on Nationwide's behalf, including lead generation telemarketing through Variable.

85.    Nationwide cloaked its agents in apparent authority specifically as to legal relations between Nationwide's agents and the public, and to hire third parties such as Variable to perform telemarketing, sufficient to support vicarious liability pursuant to the TCPA.

86.    Variable transferred customer information, including the Plaintiffs' information, directly to local insurance agents.  Thus, Variable has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling.  As such, Variable is an apparent agent of Nationwide.

87.     By hiring Variable to make calls on behalf of its agents to generate sales leads, Nationwide "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.  Similarly, by accepting these contacts, Variable "manifest[ed] assent or otherwise consent[ed]  . . . to act" on behalf of Nationwide, as described in the Restatement (Third) of Agency.  As such, Variable is an agent of Nationwide.

88.     These quotes and sales were performed by Nationwide itself.

**Plaintiff Johansen**

89.     Plaintiff Johansen is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

90.     On March 17, 2015, Mr. Johansen received a telemarketing call from "Jim" at Nationwide Insurance.  The call was placed to Mr. Johansen's DNC registered telephone number 614-791-XXXX.  The caller ID was 614-274-0112.  Mr. Johansen requested that Nationwide not call him again.

91.     On February 19, 2016, Mr. Johansen received a pre-recorded telephone message on his home telephone. Mr. Johansen responded to that pre-recorded message and he was then transferred to Dennis Thompson and then to Trenton Johnson.

- 21 -

92.    Messrs. Thompson and Johnson both held themselves out to be employees of Nationwide Insurance.

93.    On the call, Mr. Johansen was solicited to purchase Nationwide's insurance products.

94.    Mr. Johansen again requested that his telephone number be placed on the Nationwide Insurance Do Not Call List.

95.    On July 21, 2016, Mr. Johansen received yet another telemarketing call to his home telephone that appeared to have used an artificial voice.  Mr. Johansen was transferred to Jason Jakowski, who said, "It's a great day at Nationwide.  My name is Jason Jackowski and I'm a licensed agent.  How may I be of assistance today?"  The agent then disconnected from the call.

96.    Despite the filing of this lawsuit, his continued presence on the National Do Not Call Registry, and his prior requests to be placed on the Nationwide Insurance Do Not Call List, Mr. Johansen received another call on June 16, 2017 from "Jon" who was calling from "US Auto Care" as part of its relationship with Nationwide Insurance. The caller ID was 512-555-0174.During that call, Mr. Johansen was asked for his zip code and if he had home or auto insurance. After these questions, and after the Nationwide jingle played while he was on hold, the call with Mr. Johansen was transferred over to "Chris," an

individual who identified himself as an employee of Nationwide Insurance – not an independent agent – who is located at Nationwide's call center in Des Moines, Iowa.

97.     Mr. Johansen was harmed by these calls because they were unwelcome intrusions on his privacy and because they occupied his telephone line from legitimate communications.

**Plaintiff Haile-Recio**

98.     Plaintiff Haile-Recio is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

99.     Beginning in or about October 2015, Ms. Haile-Recio received multiple telemarketing calls from or on behalf of Defendant to her cellular telephone number, 206-859-XXXX.

100.     The calls Ms. Haile-Recio received identified the caller as "Nationwide" and solicited the purchase of Nationwide insurance.

101.     Ms. Haile-Recio is not and at all relevant times was not a Nationwide customer, and she has no prior or other relationship with Nationwide.

102.     During these calls, Ms. Haile-Recio repeatedly requested that calling cease, including by asking to speak to a supervisor to end the calls; however, Nationwide continued to make these telemarketing calls to her phone.

103.   On information and belief—included given the automated nature of the calls and fact that the calling continued despite multiple requests that it stop—the Nationwide calls Ms. Haile-Recio received were made using an automatic telephone dialing system with the capacity to store or produce telephone numbers and dial those numbers at random, in sequential order, or from a database or list of numbers.

104.   Further indicating that the call was made using an autodialer is the generic and scripted telemarketing pitch that the Plaintiff received on the call. This factor supports that the calls were made *en masse*, using automated equipment.

105.   Ms. Haile-Recio was harmed by these calls because they were unwelcome intrusions on her privacy, annoying, and wasted her time, and because they occupied her telephone line from legitimate communications.

## NATIONWIDE'S LIABILITY FOR ITS OWN CALLS

106.   Nationwide is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

107.   For the calls to Johansen and Haile-Recio, Nationwide used an autodialer and/or pre-recorded messages from its own office, or hired a company that engages in the use of an autodialer and/or pre-recorded messages.

108.   These calls were not made or commissioned by Nationwide Agents, and instead were commissioned and/or made by Nationwide's corporate office itself.

109.   As a result, Nationwide is directly liable for the calls to Johansen, Haile-Recio, and those similarly situated class members because it actively participated in every aspect of the autodialed and/or pre-recorded telemarketing calls.

## CLASS ACTION ALLEGATIONS

110.   Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully stated herein.

111.   Plaintiffs bring this action individually and on behalf of all other persons similarly situated (hereinafter referred to as "the Class") pursuant to Federal Rule of Civil Procedure 23.

112.   Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

CLASS 1:

> All persons within the United States who received a non-emergency telephone call from Variable, that was later transferred to Nationwide Insurance and/or an agent of Nationwide, to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice at any time from January 1, 2012, through the date of certification.

CLASS 2:

All persons within the United States who received a non-emergency telephone call from Nationwide, or any entity acting on behalf of Nationwide other than Variable, advertising Nationwide's goods or services, using an automatic telephone dialing system or an artificial or prerecorded voice at any time four years prior to the filing of the Complaint through the date of certification.

CLASS 3:

All persons within the United States whose phone numbers had been registered on the national do-not-call registry and/or the Nationwide internal do-not-call registry for 31 days or longer, and who received more than one telemarketing call within any 12-month period, from, or on behalf of Nationwide, at any time four years prior to the filing of the Complaint through the date of certification.

Collectively, all these persons will be referred to as "Class members." Plaintiffs Rice-Redding and Coleman represent, and are members of, Class One. Plaintiffs Johansen and Haile-Recio represent, and are members of, Classes Two and Three.

113.   Excluded from the Classes is Defendant, and any entities in which Defendant has a controlling interest, Defendant's agents and employees, any Judge to whom this action is assigned, and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

114.   According to the Variable database, there are more than 20,000 members in Class One.

115.   Plaintiffs do not know the exact number of members in Classes Two and Three, but Plaintiffs reasonably believe Class members number, at minimum, in the thousands.

116.   Plaintiffs and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the deletion of their cell phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

117.   This Class Action Complaint seeks injunctive relief and money damages.

118.   The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

119.   Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

120.   Further, all members of Class One are identified by name, address, and telephone number in the Variable database.  Likewise, members of Classes Two and Three can be identified easily through records maintained by Nationwide and/or its telemarketing agents.

121.   There are well defined, nearly identical, questions of law and fact affecting all parties.

122.   The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

123.   Such common questions of law and fact include, but are not limited to, the following:

a.   Whether Nationwide used an automatic telephone dialing system or an artificial or prerecorded voice in its non-emergency calls to Class members' telephones to promote its goods or services.

b.   Whether Variable, acting on behalf of Nationwide, used an automatic telephone dialing system in making non-emergency calls to Class members' cell phones;

c.   Whether Variable, acting on behalf of Nationwide, used an artificial or prerecorded voice in its non-emergency calls to Class members' cell phones;

d.   Whether the Defendant can meet its burden of showing it obtained prior express consent (*i.e.*, written consent that is clearly and unmistakably stated), to make such calls;

e.   Whether the Defendant's conduct was knowing and/or willful;

- 28 -

       f.      Whether the Defendant is liable for statutory damages; and

       g.      Whether the Defendant should be enjoined from engaging in such conduct in the future.

124.   As persons who received non-emergency telephone calls using an automatic telephone dialing system or an artificial or prerecorded voice or calls while they were on the National or Nationwide Insurance do not call lists, without their prior express consent within the meaning of the TCPA, Plaintiffs assert claims that are typical of each Class member who also received such phone calls.

125.   Further, Plaintiffs will fairly and adequately represent and protect the interests of the Classes.

126.   Plaintiffs have no interests which are antagonistic to any member of the Classes.

127.   Plaintiffs have retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

128.   A class action is the superior method for the fair and efficient adjudication of this controversy.

## CAUSES OF ACTION

## FIRST COUNT

## STATUTORY VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*, ON BEHALF OF PLAINTIFFS RICE-REDDING, COLEMAN, HAILE-RECIO AND CLASSES ONE AND TWO

129.   Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

130.   The foregoing acts and omissions of the Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

131.   As a result of the Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

132.   Plaintiffs and Class members are also entitled to and do seek injunctive relief prohibiting the Defendant's violation of the TCPA in the future.

## SECOND COUNT

## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*, ON BEHALF PLAINTIFFS RICE-REDDING, COLEMAN, HAILE-RECIO AND CLASSES ONE AND TWO

133.   Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully stated herein.

134.   The foregoing acts and omissions of the Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

135.   As a result of the Defendant's knowing and/or willful violations of 47 U.S.C. §  227 *et seq.*, Plaintiffs and each member of the Class is entitled to treble damages of up to $1,500 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

136.   Plaintiffs and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by the Defendant in the future.

## THIRD COUNT

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*, ON BEHALF OF PLAINTIFFS HAILE-RECIO AND JOHANSEN AND CLASS THREE

137.   Plaintiffs Haile-Recio and Johansen incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

138.   The foregoing acts and omissions by Defendant constitute violations of 47 U.S.C. § 227(c), which prohibits initiating calls to a person's residential or cellular telephone more than once during a twelve month period, for telemarketing

purposes, where such number is listed on the Do Not Call Registry.  *See* 47 C.F.R.

§ 64.1200(c)(2).

139.   As a result of the Defendant's violations of 47 U.S.C. § 227 *et seq.*,

Plaintiff Johansen and the Class Members on the national Do Not Call Registry

and/or the Nationwide Internal Do Not Call Registry are entitled to damages for

each and every violation of the statute.  *See* 47 U.S.C. § 227(c)(5).

140.   Plaintiff Johansen and Class Members on the national Do Not Call

Registry or the Nationwide Internal Do Not Call Registry are also entitled to and

do seek injunctive relief prohibiting such conduct violating the TCPA by the

Defendant in the future.  *See Id.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs

and all Class members the following relief against the Defendant:

A.      Injunctive relief prohibiting such violations of the TCPA by the

Defendant in the future;

B.      As a result of the Defendant's willful and/or knowing violations of 47

U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member treble

damages, as provided by statute, of up to $1,500 for each and every violation of the

TCPA;

C.     As a result of Defendant's statutory violations of 47 U.S.C.

§ 227(b)(1), Plaintiffs seek for themselves and each Class member $500 in

statutory damages for each and every violation of the TCPA;

D.     As a result of Defendant's violations of 47 C.F.R. § 64.1200(c),

Plaintiff Johansen seeks for himself and the other Class members whose telephone

numbers were called at least twice within any 12-month period despite being

registered with the National Do Not Call Registry, up to $500 in statutory damages

for each and every violation of such regulations, or—where such regulations were

willfully or knowingly violated—up to $1,500 for each and every violation;

E.     An award of attorneys' fees and costs to counsel for Plaintiffs and the

Class as permitted by law;

F.     An order certifying this action to be a proper class action pursuant to

Federal Rule of Civil Procedure 23, establishing an appropriate Classes the Court

deems appropriate, finding that Plaintiffs are a proper representative of the Class,

and appointing the lawyers and law firms representing Plaintiffs as counsel for the

Class;

G.     Such other relief as the Court deems just and proper.

Dated:  June 30, 2017      By:   _s/____
                             Anthony Paronich (*pro hac vice*)
anthony@broderick-law.com
Broderick & Paronich, P.C.
125 Summer St., Suite 1030
Boston, MA 02360
Telephone:  (508) 221-1510

Dated:  June 30, 2017      By:  _/s/_____
                           Jonathan D. Selbin

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Jonathan D. Selbin (*pro hac vice*)
Email:  jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Daniel M. Hutchinson (*pro hac vice*)
Email:  dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Dated:  June 30, 2017      By:  _/s/_____
                           Alexander H. Burke

BURKE LAW OFFICES, LLC
Alexander H. Burke (*pro hac vice*)
Email: aburke@burkelawllc.com
Daniel J. Marovitch (*pro hac vice*)
Email: dmarovitch@burkelawllc.com
155 N. Michigan Avenue, Suite 9020
Chicago, IL  60601
Telephone:  (312) 729-5288
Facsimile:  (312) 729-5289

Dated:  June 30, 2017      By:  ___/s/_____

Matthew McCue (*pro hac vice*)
Email: mmccue@massattorneys.net
Law Office Of Matthew McCue
1 South Ave, Suite 3
Natick, MA 01760
Telephone:  (508) 655-1415

Steven H. Koval
Georgia Bar No. 428905
THE KOVAL FIRM, LLC
3575 Piedmont Road
Building 15, Suite 120
Atlanta, GA  30305
Telephone:  (404) 513-6651
Facsimile: (404) 549-4654
shkoval@aol.com

Dated:  June 30, 2017      By:  ___/s/_____

Matthew R. Wilson

MEYER WILSON CO., LPA
Matthew R. Wilson (*pro hac vice*)
Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice*)
Email:  mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

*Attorneys for Plaintiffs and the Proposed Classes*

## CERTIFICATION OF COUNSEL

I hereby certify in accordance with U.S.D.C. N.D. Ga. Local Rule

7.1D that the foregoing FIRST AMENDED CLASS ACTION COMPLAINT has

been prepared using Times New Roman, 14 point font, as required in U.S.D.C.

N.D. Ga. Local Rule 5.1C.

Dated:  June 30, 2017

s/
By:  Anthony Paronich (*pro hac vice*)

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that a copy of the foregoing was filed

through this Court's CM/ECF system, and that all attorneys of record will be sent a

copy of the same electronically through that system.

Dated:  June 30, 2017

s/
By:  Anthony Paronich (*pro hac vice*)